UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:08-CV-00091-TBR

**FOREST SERVICE EMPLOYEES**
**FOR ENVIRONMENTAL ETHICS and**
**DAPHNE SEWING**                                                                **PLAINTIFFS**

**v.**

**UNITED STATES FOREST SERVICE**                                            **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff, Forest Service Employees for Environmental Ethics ("FSEEE"), Motion for Attorney's Fees and Expenses (Docket # 49). The Defendant, United States Forest Service ("Forest Service") has filed a Response (Docket # 60). The Plaintiff has filed a reply (Docket # 61). The Defendant has also filed a motion for an extension of time (Docket # 59). This matter is now ripe for adjudication. The motion for an extension of time is GRANTED. For the following reasons, the Plaintiff's Motion for Attorney's Fees and Expenses is GRANTED IN PART.

## BACKGROUND

The Plaintiffs, Forest Service Employees for Environmental Ethics ("FSEEE"), an Oregon corporation, and Daphne Sewing, a Nevada resident and FSEEE member, sought judicial review of the Forest Service's September 21, 2007, decision to authorize the Continued Maintenance of Open Lands ("Project") on the Land Between the Lakes National Recreational Area ("LBL"), under the Administrative Procedure Act ("APA"). Plaintiffs sought to enjoin the implementation of this Project, and to void the Challenge Cost Share Stewardship Agreement ("Stewardship Agreement") between the Forest Service and National Wild Turkey Federation ("NWTF") entered into on January 14, 2008.

On April 30, 2007, the Forest Service released an environmental assessment ("EA") for its Open Lands Project. AR 49-291. After completion of the EA, Decision Notice, and Finding of No Significant Impact ("FONSI"), the documents were approved by the Forest Service. AR 292. FSEEE appealed the April 30, 2007, decision. AR 298-303. In response, the Forest Service withdrew the decision. AR 312. A Revised Environmental Assessment ("REA") was prepared with more in depth consideration of the potential effects of the proposed activities on wildlife resources. AR 325-608; 388-435. On September 21, 2007, the Forest Service issued its open lands decision and FONSI. AR 317-22; 322-324. On October 19, 2007, FSEEE administratively appealed the Forest Service's open lands decision because the proposed pesticide use may have a significant environmental impact on amphibians that must be disclosed in an environmental impact statement ("EIS"). AR 617-23. On December 6, 2007, the Forest Service denied FSEEE's appeal. AR 624-32.

On January 14, 2008, the Forest Service entered into the Stewardship Agreement with the NWTF–a private, non-profit corporation. AR 9003-21. Pursuant to the Stewardship Agreement, the NWTF, in February of 2008, issued permits to several farmers authorizing the farmers to grow corn and soybean crops and cut hay on several thousand acres of LBL land. AR 9022-51. Each of these permits were signed by Robert Abernethy, Director of Agency Programs for the NWTF. Abernethy is not an employee of the Forest Service. FSEEE alleges that at this time, there is no Forest Service-issued special-use permit to farm at LBL as required, yet private commercial farming continues on national forest land.

The Plaintiffs asserted that the approval of the Project violated the National Environmental Policy Act ("NEPA"). The Plaintiffs contended that the Forest Service was required to prepare an EIS instead of relying on the REA. The Plaintiffs further alleged that the Forest Service by

2

implementing the Project through the Stewardship Agreement violated the Organic Administration Act ("OAA") and its implementing regulations. On Summary Judgment, this Court determined that the Forest Service violated the OAA but did not violate the NEPA.

In the initial complaint, Plaintiffs also brought claims alleging violations of the National Forest Management Act ("NFMA") and the Farm Security and Rural Investment Act of 2002 ("FSRIA"). Both of these claims were omitted from the amended complaint.

Plaintiff Sewing took no part in the request for costs and fees.

## STANDARD

Under the Equal Access to Justice Act ("EAJA"), a "court shall award to a prevailing party other than the United States fees and other expenses, . . . incurred by that party in any civil action . . . unless the court finds that the position of the United States was substantially justified . . ." 28 U.S.C. § 2412(d)(1)(A). Since the other requirements of the EAJA are undisputed, whether the United States was substantially justified in their position is the only issue other than disputes over the amount of fees.

## DISCUSSION

### I. Substantial Justification

To be substantially justified, the government's position must be "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). It means something more than "merely undeserving of sanctions for frivolousness." *Id.* at 566. Importantly, many cases have found that a violation of an agency's own regulations requires a court to find that an agency position was not substantially justified. *Geo-Seis Helicopters, Inc. v. United States*, 79 Fed. Cl. 74, 78 (2007); *Adams v. Barnhart*, 445 F. Supp. 2d 593, 596 (D.S.C. 2006); *Mendenhall*

3

*v. Nat'l Transp. Safety Bd.*, 92 F.3d 871, 874 (9th Cir. 1996).

The only claim on which Plaintiff prevailed at summary judgment was the OAA claim. Under the OAA, use of public lands, other than a few narrow exceptions, is conditioned on obtaining a special-use permit. Special-use permits can only be issued by an 'authorized officer,' which is defined as "any employee of the Forest Service to whom has been delegated the authority to perform the duties described in this part." 36 C.F.R.§ 251.51. Since an authorized officer in the employ of the Forest Service was not issuing the special-use permits at issue in this case, the Forest Service was violating its own regulations and, as its enabling act, the OAA. Accordingly, because the Forest Service took a position in direct violation of their own regulations, that position was not substantially justified. Since all the other requirements in this case are conceded, an award under the EAJA is appropriate.

The Forest Service also contends that it was substantially justified because this was an issue of 'first impression.' It seems clear, however, that adverse legal precedent is not required before a position is not substantially justified. *Gutierrez v. Barnhart*, 274 F.3d 1255, 1261 (9th Cir. 2001); *United States v. Douglas*, 55 F.3d 586, 588-89 (11th Cir. 1995). Rather, as discussed above, the position must satisfy a reasonable person, regardless of whether it has been litigated on a prior occasion. Requiring adverse precedent would border on requiring a demonstration that the government was deserving of sanctions for frivolousness, which the Supreme Court has stated is not a correct test.

**II. Calculating Fees**

For calculating fees, the Court must first determine the appropriate hourly rate. As a starting point, "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that

an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412. The Supreme Court has stated that a 'special factor' refers to attorneys "'qualified for the proceedings' in some specialized sense, rather than just in their general legal competence." *Pierce*, 487 U.S. at 572. Plaintiff contends that his experience in complex environmental litigation is a 'special factor' that justifies a fee enhancement under § 2412. *See Love v. Reilly*, 924 F.2d 1492 (9th Cir. 1991). However, directly opposed to the holding of *Love*, multiple courts have found that expertise justifying enhancement must come from "specialized training," and not just experience in a specific field. *See, e.g.*, *In re Sealed Case 00-5116*, 254 F.3d 233, 235 (D.C. 2001); *Estate of Cervin v. Commissioner*, 200 F.3d 351, 354 (5th Cir. 2000); *Raines v. Shalala*, 44 F.3d 1355 (7th Cir. 1995); *Stockton v. Shalala*, 36 F.3d 49, 50 (8th Cir. 1994); *Chynoweth v. Sullivan*, 920 F.2d 648, 650 (10th Cir. 1990). These courts feel that "[i]f expertise acquired through practice justified higher reimbursement rates, then all lawyers practicing administrative law in technical fields would be entitled to fee enhancements . . . nothing in the EAJA suggests this entitlement." *In re Sealed Case*, 254 F.3d at 236. Rather, 'specialized training' requires training other than legal experience, such as the science or engineering background required for patent law. *Id.* This Court finds the rationale adopted by the majority of the circuits more persuasive. Accordingly, no special enhancement will be granted on the grounds of Plaintiff's expertise in environmental litigation.

Plaintiff also asks for an enhancement based on the unavailability of attorneys in the Paducah area capable of handling this kind of litigation. However, given that this Court admitted Plaintiff's attorney *pro hac vice*, such a restricted view of the qualified market is inappropriate. Accordingly, no enhancements are necessary under the 'special factor' provision.

Next, this Court must consider whether an enhancement is merited under the cost of living provision. "[A]djustments for increases in the Consumer Price Index [are left to] the sound discretion of the district court." *Begley v. Sec'y of Health and Human Serv.*, 966 F.2d 196, 199 (6th Cir. 1992). In the current case, there seems to be ample evidence that the cost of living has increased considerably since the EAJA was passed and this Court thinks that such increases justify a higher award. As a result, the increases established for Southern Urban Areas by the Consumer Price Index guide Plaintiff's appropriate fee. Plaintiff shall receive $168.00/hour.

Finally, the Court must determine the appropriate number of hours to be billed. In this case, Plaintiff had a total of four different claims. Plaintiff won and lost a claim on summary judgment, and two claims in the original complaint were dropped from the amended complaint. A "district court's decision awarding EAJA attorney fees for . . . work in . . . collateral and discrete issues [constitutes] an abuse of discretion" if the position in those issues was substantially justified. *Willis v. Sullivan*, 931 F.2d 390, 401-02 (6th Cir. 1991). The Forest Service was substantially justified on those issues that were won or dropped. Accordingly, the important question when reviewing the hours is whether the claims on which the Forest Service was substantially justified were "collateral and discrete issues."

In the current case, the only thing the counts had in common was that they related to the LBL area. Success on count one would have required the Forest Service to prepare an EIS rather than a FONSI. The original count two would have required the Forest Service to forbid rowcropping and the attendant pesticide application. The original count three would have found the Forest Service in violation of the FSRIA. Amended count two required setting aside special-use permits granted by the NWTF rather than a Forest Service employee until signed by an appropriate Forest Service

6

employee.

All of the claims in the current case stemmed from completely different regulatory schemes. The relief available under each count was independent of the other counts. Because the successful claim involved an illegal delegation, the facts required to win under such a claim were completely different than those required to show that the Forest Service was in violation of the NEPA, FONSI or FSRIA. Accordingly, the issues are collateral and discrete and the fees must be apportioned accordingly.

Plaintiff also argues that all hours should be compensated because of the 'excellent result' obtained by the Plaintiff. A plaintiff obtains excellent results when the results constitute a "total accomplishment of the aims of the suit, despite the plaintiffs' losses on certain minor contentions." *Henslet v. Eckerhart*, 461 U.S. 424, 431 (1983) (internal quotations omitted). While *Comm'n, I.N.S. v. Jean*, 496 U.S. 154, 163 n.10 (1990), makes clear that the § 1988 standard discussed in *Henslet* is applicable to EAJA fees claims, Plaintiff in this case did not obtain excellent results. Plaintiff initially filed a complaint trying to limit farming, rowcroping, and pesticide use in the LBL area. However, Plaintiff was only able to win on a claim requiring the Forest Service to sign special-use permits issued in the LBL rather than the NWTF. Losing on their initial and primary counts hardly constitutes 'minor contentions.' Rather, this is a situation where "plaintiff has achieved only partial or limited success, [and] the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate [is] an excessive amount." *Id.* at 436.

Plaintiff alleges that 262.1 hours were spent on this case in total, prior to hours spent on costs and fees issues. Of these, Plaintiff claims that 194.7 should be billed to the claim that Plaintiff successfully obtained summary judgment on. Defendant contends that only 63.5 hours should be

7

compensated, which are hours spent on the case after the amended complaint was filed. Neither of these hours fairly balance the interests involved. Plaintiff won on one of four total counts brought. However, more time was spent after the amended complaint than before, which included only two counts. Therefore, the fees should be closer to 50 percent than 25. After reviewing the billing records and the amount of work in common between the issues, this Court shall award attorney's fees for 45 percent of the total hours worked. This results in 117.945 hours and fees of $19,814.76 in the underlying litigation.

Once the original determination is made that the government's position was not substantially justified, there is no need for a second finding that fee litigation is not substantially justified. *Comm'r, I.N.S.*, 496 U.S. 154. Plaintiff is entitled to fees associated with this fee litigation in additions to fees for the original litigation. However, a reduction in hours can result if Plaintiff lost portions of the costs and fees motion. *Id.* at 163 n.10. Plaintiff has spent a total of 71 hours on costs a fees issues. However, because Plaintiff spent time arguing for fees that were not ultimately awarded, the hour total must be reduced accordingly. Plaintiff will receive credit for 50% of the hours spent on costs and fees litigation, for a total of 35.5 hours and $5,964.

Plaintiff has billed 46.75 paralegal hours. "A prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the Government at prevailing market rates." *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 590 (2008). However, as above, Plaintiff shall receive credit for only 45% of the total paralegal hours. Defendant has not contested the market rate of $100 an hour for paralegal aid. Accordingly, Plaintiff shall receive 21.0375 hours and $2,103.75 in paralegal fees.

Plaintiff has also requested expert fees. The expert fees were expended during the

preparation of the motion for fees. Ultimately, the expert testimony was not accepted by this Court. Accordingly, the expert fees shall be discounted at the same rate as the hours for the motion for fees was. Plaintiff shall receive $1,050 for expert fees in connection with the motion for fees and costs.

The costs in this case are uncontested. Accordingly, Plaintiff shall receive $467.64 in costs.

In total, Plaintiff shall receive: $19,814.76 (Underlying Attorney Fees) + $5,964 (Costs and Fees Attorney Fees) + $2,103.75 (Paralegal Fees) + $1,050 (Expert Fees) + $467.64 (Costs) = **$29,403.15.**

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for fees is GRANTED IN PART in the amount of **$29,403.15.** Defendant's motion for an extension of time is GRANTED.